OPINION OF THE COURT
Hancock, Jr., J.
 Plaintiffs decedent was killed while inflating a truck tire, manufactured by Goodyear, when the multipiece tire rim, not manufactured by Goodyear, separated explosively. The issues are whether (1) Goodyear may be subject to concerted action liability under the alleged facts in this product liability action and (2) Goodyear has a duty to warn against its nondefective tire being used with an allegedly defective tire rim manufactured by others. For the reasons stated below, we conclude that plaintiff’s claims under both theories of liability should be dismissed. Accordingly, we reverse the order of the Appellate Division.
I
In June 1984, John Wunderlich was inflating a tire on his employer’s 1970 Chevrolet dump truck when the multipiece tire rim, upon which the tire was mounted, violently flew apart. A piece of the rim struck Wunderlich in the head, killing him instantly.
Multipiece rims are not a uniform product. The tire, manufactured by defendant Goodyear Tire & Rubber Company, was compatible for use on some but not all multipiece rim assem *294 blies.[1] The particular rim assembly involved in this case was an RH5 degree (RH5) model, consisting of a side or locking ring marked "Firestone, 20 X 6.0, RH5” and a rim base marked "K-H” for the Kelsey-Hayes Company. The Appellate Division concluded that Goodyear neither manufactured nor sold the subject rim or its parts (165 AD2d 111, 114). Moreover, Goodyear’s proof that it never has been a manufacturer or marketer of the RH5 rim assembly model or its component parts is not disputed by anything in the record.
In August 1985, plaintiff Francene Rastelli, as administratrix of the decedent’s estate, brought suit for decedent’s pain and suffering and wrongful death against Goodyear, Firestone Tire and Rubber Company, Kelsey-Hayes Company, and the Budd Company (the manufacturers of substantially all multipiece tire rims produced in the United States). The complaint sets forth causes of action based upon four theories of liability: (1) negligence, (2) strict products liability, (3) breach of warranty, and (4) concerted action. Goodyear moved for summary judgment based upon proof that it had not designed, manufactured or marketed any part of the rim involved in decedent’s accident. Supreme Court denied Goodyear’s motion, with leave to renew after the completion of discovery. The Appellate Division modified by reversing to the extent of granting Goodyear summary judgment on the breach of warranty claims, and otherwise affirmed the denial of summary judgment on the concerted action, strict products liability and negligence claims.
The Appellate Division held that plaintiff’s failure to counter the proof that Goodyear did not manufacture or market any part of the rim defeated her breach of warranty claims. However, it concluded that plaintiff’s submissions for her concerted action claims "were sufficient to demonstrate that further discovery may disclose an express agreement or tacit understanding among Goodyear * * * and the other major manufacturers of multipiece truck tire rims to prevent public awareness of the extreme propensity of all such rims to explode, and to block governmental action which would have required the manufacturers to recall the products” (165 AD2d 111, 115, supra [emphasis in original]). The court also held *295 that plaintiffs negligence and strict products liability claims set forth an alternative basis for liability not dependent on establishing that Goodyear manufactured the rim. Specifically, it stated that plaintiffs allegations that the subject Goodyear tire was made exclusively for use on inherently dangerous multipiece rims "could support recovery based upon Goodyear’s failure to warn of the dangers of using its tires with multipiece rims” (id., at 116).
Goodyear appeals pursuant to leave granted by the Appellate Division, arguing (1) that the tort theory of concerted action is not applicable in this products liability case and (2) product manufacturers should not be required to warn about the inherent dangers of a separate product manufactured by another company. We address Goodyear’s arguments in that order.
II
The theory of concerted action "provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in 'a common plan or design to commit a tortious act’ ” (Hymowitz v Lilly & Co., 73 NY2d 487, 506 [quoting Prosser and Keeton, Torts § 46, at 323 (5th ed)]; see, Bichler v Lilly & Co., 55 NY2d 571, 580-581; De Carvalho v Brunner, 223 NY 284; Restatement [Second] of Torts § 876). It is essential that each defendant charged with acting in concert have acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort (see, Prosser and Keeton, op. cit., at 324). Parallel activity among companies developing and marketing the same product, without more, we have held, "is insufficient to establish the agreement element necessary to maintain a concerted action claim” (Hymowitz v Lilly & Co., supra, at 506).
In Hymowitz, this Court declined to adopt a modified version of concerted action, holding that inferring agreement from the common occurrence of parallel activity alone would improperly expand the concept of concerted action beyond a rational or fair limit (id., at 508). We explained that because application of concerted action renders each manufacturer jointly liable for all damages stemming from any defective product of an entire industry, parallel activity by manufacturers is not sufficient justification for making one manufacturer responsible for the liability caused by the product of another *296 manufacturer (see, id.; Bichler v Lilly & Co., supra, at 581). Accordingly, v/e must determine here whether plaintiff has made any showing that the rim manufacturers engaged in more than parallel activity and, if not, whether the circumstances warrant expanding the concerted action theory so that it applies in this case.
In opposition to Goodyear’s motion for summary judgment dismissing the concerted action claims, plaintiff alleged that Goodyear engaged in concerted action with Firestone, Kelsey-Hayes and Budd “to perpetuate the use of the deadly multipiece rims, to prevent Government implementation of appropriate safety standards and to prevent a recall.” More specifically, plaintiff alleged that the rim manufacturers took the following actions: campaigned through their trade association for OSHA to place the responsibility for safety precautions on truck maintenance employers and not on the manufacturers, decided not to issue warnings, lobbied successfully against a proposed ban on the production of all multipiece rims, and declined to recall the RH5 multipiece rim voluntarily.
These allegations and the exhibits plaintiff submitted to support them show parallel activity by the rim manufacturers. But they do not raise an issue of fact as to whether the rim manufacturers were parties to an agreement or common scheme to commit a tort. Indeed, plaintiff’s affirmation in opposition to Goodyear’s motion for summary judgment states no more than that ”[t]he events described show parallel actions by the manufacturers”. Thus, under Hymowitz, plaintiff’s showing of the common occurrence of parallel activity among companies manufacturing the same product is insufficient to establish a concerted action claim because parallel activity does not constitute the required agreement between the companies (Hymowitz v Lilly & Co., 73 NY2d 487, 506, supra). Moreover, not only must the manufacturers have engaged in more than parallel activity, but their activity must also have been tortious in nature. Plaintiff failed to provide any evidence that the rim manufacturers’ lobbying activities were tortious.
We see no reason in this case for extending the concerted action concept to create industrywide liability and make recovery possible when, as here, plaintiff alleges only parallel activity; indeed, plaintiff does not argue that we should do so (see generally, Cummins v Firestone Tire & Rubber Co., 344 Pa Super 9, 495 A2d 963 [concerted action claim not maintain *297 able in multipiece rim case]; Tirey v Firestone Tire & Rubber Co., 33 Ohio Misc 2d 50, 513 NE2d 825 [same]; Bradley v Firestone Tire & Rubber Co., 590 F Supp 1177 [WD SD] [same]; but see, Cousineau v Ford Motor Co., 140 Mich App 19, 363 NW2d 721 [concerted action claim maintainable]). For the above reasons, we conclude that Goodyear may not be held liable under the concerted action theory for the alleged defective product of another where, as here, no more than parallel activity was shown.
Ill
Plaintiffs alternative theory of recovery sounds in negligence and strict products liability. She alleges that the subject Goodyear tire was made for installation on a multipiece rim, that Goodyear was aware of the inherent dangers of using its tires in conjunction with such rims and, thus, that Goodyear had a duty to warn of the dangers resulting from such an intended use of its tires. Plaintiff does not claim that the subject tire was defective. Her claim is based only on the fact that the particular Goodyear tire could be used with multipiece rims which had their own alleged inherent defects.[2]
We have held that a plaintiff may recover in strict products liability or negligence when a manufacturer fails to provide adequate warnings regarding the use of its product (see, Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106-107; Torrogrossa v Towmotor Co., 44 NY2d 709; Wolfgruber v Upjohn Co., 72 AD2d 59, 62, affd 52 NY2d 768). A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known (see, Cover v Cohen, 61 NY2d 261, 275; Alfieri v Cabot Corp., 17 AD2d 455, 460, affd 13 NY2d 1027; Donigi v American Cyanamid Co., 57 AD2d 760, affd 43 NY2d 935; 1 Weinberger, New York Products Liability § 18:04; see also, Grzesiak v General Elec. Co., 68 NY2d 937).
Under the circumstances of this case, we decline to hold that one manufacturer has a duty to warn about another *298 manufacturer’s product when the first manufacturer produces a sound product which is compatible for use with a defective product of the other manufacturer. Goodyear had no control over the production of the subject multipiece rim, had no role in placing that rim in the stream of commerce, and derived no benefit from its sale. Goodyear’s tire did not create the alleged defect in the rim that caused the rim to explode. Plaintiff does not dispute that if Goodyear’s tire had been used with a sound rim, no accident would have occurred (see, Lytell v Goodyear Tire & Rubber Co., 439 So 2d 542 [La Ct App]).
This is not a case where the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn (see, Ilosky v Michelin Tire Corp., 307 SE2d 603 [W Va]). Nothing in the record suggests that Goodyear created the dangerous condition in this case. Thus, we conclude that Goodyear had no duty to warn about the use of its tire with potentially dangerous multipiece rims produced by another where Goodyear did not contribute to the alleged defect in a product, had no control over it, and did not produce it (see, Gifaldi v Dumont Co., 172 AD2d 1025; Hansen v Honda Motor Co., 104 AD2d 850; Baughman v General Motors Corp., 780 F2d 1131 [4th Cir]; Spencer v Ford Motor Co., 141 Mich App 356, 367 NW2d 393; Mitchell v Sky Climber, 396 Mass 629, 487 NE2d 1374).
Accordingly, the order of the Appellate Division should be reversed, with costs; defendant Goodyear’s motion for summary judgment dismissing the amended complaint and all cross claims against it should be granted; and the question the Appellate Division certified to this Court should be answered in the affirmative.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.

. The record indicates that the subject tire could be used with 24 different models of multipiece rims, out of the approximately 200 types of multipiece rims sold in the United States. The tire comported with size standards published by the Tire and Rim Association.

. Plaintiff argued for the first time on appeal that the tire was defective because it contained no warnings against using the tire in an underinflated condition or not inflating the tire in a protective Cage. This claim was not raised in Supreme Court, has no support in the record, was not addressed by the Appellate Division and, thus, cannot be considered by this Court. Moreover, plaintiff does not claim that such allegedly dangerous conditions caused the accident in this case.