**Monica SANTIAGO, Plaintiff,**

v.

**SHERWIN–WILLIAMS COMPANY, et al., Defendants.**

**CA No. 87–2799–T.**

United States District Court, D. Massachusetts.

July 2, 1992.

Jonathan Shapiro, Stern & Shapiro, Neil T. Leifer, Stephen J. Kiely, Thornton & Early, Boston, Mass., Judith E. Somberg, Johnson & Somberg, Jamaica Plain, Mass., Arthur Bryant, Washington, D.C., for plaintiffs.

Thomas V. Urmy, Jr., Shapiro, Grace & Haber, Mary Morrissey Sullivan, Sullivan, Sullivan & Pinta, Lawrence Gerard Cetrulo, Burns & Levinson, Peter S. Terris, Palmer & Dodge, Thomas J. Griffin, Jr., Goodwin, Proctor & Hoar, Rory John Fitzpatrick, Rory Fitzpatrick, Meghan H. Magruder, John C. Solomon, Bingham, Dana & Gould, Boston, Mass., Janie S. Mayeron, G. Marc Whitehead, Ellen Maas, Michael L. Nilan, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., Kirsten K. Robbins, Kirkland & Ellis, Washington, D.C., Paul Michael Pohl, Charles H. Moellenberg, Jones, Day, Reavis & Pogue, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff Monica Santiago brought this tort action against several defendants [1] alleging that their manufacture of lead pigment for use in lead paint caused her injury. In an earlier opinion, this court refused to apply market share liability theory

---

1. Defendants include Sherwin–Williams Company, NL Industries, Inc., Eagle–Picher Industries, Inc., Atlantic Richfield Corp. (successor to International Smelting & Refining Company), and SCM Corporation (successor to Glidden Company). On January 7, 1991, defendant Eagle–Picher filed for bankruptcy in Ohio, thus automatically staying this action against it. *See* 11 U.S.C. § 362.

in the context of lead paint poisoning. *Santiago v. Sherwin–Williams Co.*, 782 F.Supp. 186 (D.Mass.1992) (*Santiago I*). Presently at issue is whether plaintiff may pursue her claims under either a concert of action or an enterprise liability theory.

The gravamen of plaintiff's claim is that defendants implicitly agreed to produce, market and promote lead pigment, and to refrain from warning of known health risks associated with the product. The parties' motions for summary judgment are before the court.

### I.

### *Concert of Action*

■ Massachusetts law recognizes the concert of action theory of tort liability.[2] Under this theory, a defendant who has an agreement with another to perform a tortious act or to achieve a tortious result, may be liable to a plaintiff, even if that defendant was not the cause-in-fact of the injury. *Payton*, 512 F.Supp. at 1035 (*citing Gurney v. Tenney*, 197 Mass. 457, 466, 84 N.E. 428 (1908)). Plaintiff need not prove the existence of an agreement by direct evidence. *See Nelson v. Nason*, 343 Mass. 220, 222, 177 N.E.2d 887 (1961) (drag racing). Rather, an agreement may be inferred if the conduct of the defendants suggests a tortious implied meeting of the minds. *Payton*, 512 F.Supp. at 1035; *Nelson*, 343 Mass. at 222, 177 N.E.2d 887.

Defendants argue that, since plaintiff cannot identify any one defendant as the cause of her harm, they are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (failure of proof on an essential element of plaintiff's claim mandates summary judg-

ment). Plaintiff responds that Massachusetts' version of concert of action relaxes the identification requirement.

### A.

The classic paradigm of concerted action is a drag race where one driver is the cause-in-fact of plaintiff's injury and the fellow racer is also held liable for the injury. *See, e.g., Marshall v. Celotex Corp.*, 691 F.Supp. 1045, 1047 (E.D.Mich.1988).[3] Courts typically apply the theory when "a particular defendant is already identified as causing the plaintiff's harm, and the plaintiff desires to extend liability to those acting in league with that defendant." *Sabean v. Marshall's Inc.*, No. 55978, slip op. at 14 (Suffolk Super.Ct. May 20, 1985) (citing *Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 342 N.W.2d 37, 47, *cert. denied*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984)); *see also Zafft*, 676 S.W.2d at 245 (concerted action "developed, not to relieve plaintiffs of the burden of identifying the wrongdoer, but to impose liability on culpable co-participants").

■ Massachusetts courts have recognized concert of action liability only under the narrow circumstances of a drag race. *See Orszulak v. Bujnevicie*, 355 Mass. 157, 243 N.E.2d 897 (1969); *Nelson v. Nason*, 343 Mass. 220, 177 N.E.2d 887 (1961). Other courts have generally held that the concert of action theory is inapplicable when the plaintiff cannot identify at least one defendant as the cause-in-fact of injury. In other words, under concert of action "[t]he requirement of causation remains intact." *Morton v. Abbott Laboratories*, 538 F.Supp. 593, 595 (M.D.Fla.1982); *see also Marshall*, 691 F.Supp. at 1047 (concert of action theory not fashioned to ease plaintiff's burden of proving causation); *Col-*

---

**2.** Massachusetts has adopted the *Restatement (Second) of Torts* (hereinafter "Restatement") approach to this issue. *See Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (D.Mass.1981). Section 876 of the Restatement, titled "Persons Acting in Concert," provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to conduct himself."

**3.** Other courts recognizing this traditional view of concerted action include *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 946, 539 N.E.2d 1069, 1074, *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 338 (1989); *Abel v. Eli Lilly and Co.*, 418 Mich. 311, 343 N.W.2d 164, 176 (1984); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 245 (Mo.1984); *Lyons v. Premo Pharmaceutical Labs, Inc.*, 170 N.J.Super. 183, 406 A.2d 185, 190, *certif. denied*, 82 N.J. 267, 412 A.2d 774 (1979).

*lins,* 342 N.W.2d at 47 (concert of action theory "rarely has been used to help plaintiffs avoid the identification requirement"); *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 984 (1985) (DES plaintiff could not maintain concert of action claim where she is "unable to isolate a particular manufacturer as a causative agent of [her] injuries"); *Smith v. Eli Lilly & Co.,* 173 Ill.App.3d 1, 122 Ill.Dec. 835, 852, 527 N.E.2d 333, 350 (1988) ("[c]oncerted action is normally applied to situations where, unlike this DES case, a specific defendant is already identified as causing the plaintiff's harm, and the plaintiff wishes to extend liability to others acting with that defendant"), *rev'd on other grounds,* 137 Ill.2d 222, 148 Ill.Dec. 22, 560 N.E.2d 324 (1990).[4]

### B.

There is some authority for accepting a less stringent standard with respect to application of the concert of action theory. *See* Kathy J. Owen and C. Vernon Hartline, Jr., *Industry-wide Liability: Protecting Plaintiffs and Defendants,* 44 Baylor L.Rev. 45, 52 (Winter 1992) (courts have extended concert of action theory "to adapt to the difficulties of identification problems confronted in the rapidly developing area of strict products liability").[5] In *Abel v. Eli Lilly and Co.,* 418 Mich. 311, 343 N.W.2d 164, 176 (1984), for example, the court allowed a DES plaintiff to proceed under concert of action, even though she could not identify the defendant that was the cause-in-fact of her injury. Other courts have indicated that concert of action may operate to bypass the traditional identification requirement. *See, e.g., Hymowitz,* 541 N.Y.S.2d at 945, 539 N.E.2d at 1073 ("[T]he accepted tort doctrines of alterna-

tive liability and concert of action are available in some personal injury cases to permit recovery where the precise identification of a wrongdoer is impossible."); *Farmer v. Newport,* 748 S.W.2d 162, 164 (Ky.App.1988) ("Since the nature of the concert of action theory is one of joint control and risk, the plaintiff need not identify the specific defendant who caused the injury.").

These cases, however, are distinguishable. *Abel* and *Hymowitz* both involved DES plaintiffs, who could demonstrate a signature injury. *See Santiago I,* 782 F.Supp. at 193 (refusing to apply market share theory—and, therefore, to relax the identification requirement—because of the "possibility that the defendants did not cause the harm in question"). In *Farmer,* the plaintiffs sued manufacturers for negligence in making mattresses that were combustible. There, however, the plaintiffs were able to identify one of the mattress manufacturers. 748 S.W.2d at 164.

■ The Massachusetts Supreme Judicial Court has indicated that it would relax the identification requirement only in circumstances that would limit a defendant's liability to the harm it actually caused. *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171, 188 (1982). *See also Santiago I,* 782 F.Supp. at 191–92 (discussing the identification requirement under Massachusetts law). Under concert of action theory, however, liability is joint and several. *See, e.g., Marshall,* 691 F.Supp. at 1048; *Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 582 N.Y.S.2d 373, 375, 591 N.E.2d 222, 224 (1992); *Smith v. Cutter Biological, Inc.,* 72 Haw. 416, 823 P.2d 717,

---

**4.** *See also* Note, *DES: Judicial Interest Balancing and Innovation* 22 B.C.L.Rev. 747, 759–760 n. 95 (1981–82) ("[T]he plaintiff pleading concerted action must initially show that at least one identified actor tortiously has caused him harm. This tortfeasor may be called the hub of the tort. To this identified hub may then be joined, for the purpose of imposing joint and several liability, all those who substantially aided or encouraged the hub's tortious conduct. Without this hub linking the group's tortious cooperation to the plaintiff's harm, a case of concerted action is not present.").

**5.** Plaintiff points to *Payton,* 512 F.Supp. 1031, as authority that Massachusetts courts have already adopted a modified concerted action theory. The issue, however, was not directly addressed by the court. In *Payton,* Judge Skinner assumed, without deciding, that plaintiffs could proceed against DES manufacturers under concert of action theory without first identifying which defendant had caused the plaintiffs' injury. *Id.* at 1037. He ultimately refused to apply concert of action theory because plaintiffs could

726 (1991). If applied here, therefore, a lead pigment manufacturer could be held liable for 100 percent of plaintiff's injury, even if it did not actually cause her injury. Under plaintiff's proposed application, "the concert of action theory contains no limitations to defendants' liability. Defendants may not show that another is the cause in fact of the injury and absolve themselves of liability." *Marshall*, 691 F.Supp. at 1048; *see also Smith*, 823 P.2d at 726 (unfair to hold blood product manufacturers jointly and severally liable under concert of action theory). Applying concert of action here would "expand the doctrine far beyond its intended scope." *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal. Rptr. 132, 141, 607 P.2d 924, 933, *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980).

This court concludes, therefore, that in the absence of an identifiable tortfeasor, plaintiff may not pursue her concert of action claim.

## II.

### *Enterprise Liability*

Enterprise liability is a variation of concert of action.[6] Its application to lead pigment manufacturers is a matter of first impression. Under this theory, an entire industry may be held liable for its collective wrongdoing. *See Hall v. E.I. Du Pont de Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y. 1972) (manufacturers of blasting caps that injured children could be held liable for omitting a warning and failing to take safety measures). In *Hall*, the court explained the application of enterprise liability:

> [P]laintiffs ... will have to demonstrate defendants' joint awareness of the risks at issue in this case and their joint capacity to reduce or affect those risks. By

noting these requirements we wish to emphasize their special applicability to industries composed of a small number of units. What would be fair and feasible with regard to an industry of five or ten producers might be manifestly unreasonable if applied to a decentralized industry composed of thousands of small producers.

*Id.* at 378.[7] *See also Vigiolto v. Johns–Manville Corp.*, 643 F.Supp. 1454, 1457 (W.D.Pa.1986) ("Enterprise liability exists where ... the manufacturers collectively adhere to an unreasonable safety standard regarding the product."), *aff'd*, 826 F.2d 1058 (3d Cir.1987) Upon a showing of these elements, the burden shifts to defendants to prove lack of causation. *Hall*, 345 F.Supp. at 379–80.

The only Massachusetts court to address enterprise liability refused to apply it to an asbestos claim, stating that "it is not a cause of action recognized in the Commonwealth." *Commonwealth of Mass. v. Owens–Corning Fiberglass Corp.*, Civ. Nos. 90–3791 & 90–3845, slip op. at 13 (Mass.Super.Ct. Aug. 23, 1991).[8]

This court concludes that enterprise liability is not a viable cause of action under Massachusetts law. In *Santiago I*, this court determined that the Massachusetts Supreme Judicial Court would adopt a burden shifting mechanism only when plaintiff's claim is "clearly founded in facts which support the link between the injury suffered and the risk to which plaintiff was exposed." 782 F.Supp. at 193 (quoting *Case v. Fibreboard Corp.*, 743 P.2d 1062, 1066 (Okla.1987)). Unlike *Hall*, where there was no question that the blasting caps had caused the plaintiffs' injury, there is considerable uncertainty here as to the cause of plaintiff's injury. *See Santiago I*,

not prove the existence of an agreement among the defendants. *Id.* at 1038.

**6.** *See Starling v. Seaboard C.L.R. Co.*, 533 F.Supp. 183, 187–88 (S.D.Ga.1982) for a discussion on the derivation of enterprise liability.

**7.** The court also explained the rationale behind the theory:

> The dynamics of market competition frequently result in explicit or implicit safety standards, codes, and practices which are widely adhered to in an entire industry.... Where such standards or practices exist, the industry operates as a collective unit in the double sense of stabilizing the production

costs of safety features and in establishing an industry-wide custom which influences, but does not conclusively determine, the applicable standard of care.

*Id.* at 374 (citations omitted).

**8.** Virtually every other court that has decided whether to apply enterprise theory has rejected it. *See, e.g., Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984) (refusing to apply enterprise liability because Louisiana courts had not addressed the issue); *Lee v. Baxter Healthcare Corp.*, 721 F.Supp. 89, 94 (D.Md.1989), *aff'd*, 898 F.2d 146 (4th Cir.1990) (refusing to apply enterprise liability because plaintiff had failed to sue the

782 F.Supp. at 192–93 (recognizing that other factors, besides defendants' lead pigment, may have caused or contributed to plaintiff's injury).

## IV.

Accordingly, defendants' Motion for Summary Judgment on the concert of action and enterprise liability theory is ALLOWED, and plaintiff's Motion is DENIED.

An Order will issue.

entire industry); *Starling,* 533 F.Supp. at 190–91 (relaxation of identification requirements should be left to the legislature); *Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004, 1017 (D.S.C.1981) (refusing to apply the theory because "repugnant to the basic tenets of tort law"); *Smith,* 823 P.2d at 727 (inherent unfairness in holding one or two parties responsible in full for the actions of tortfeasors who may escape liability for some reason); *Sindell,* 163 Cal.Rptr. at 143, 607 P.2d at 935 (distinguishing *Hall* on the basis that at least 200 manufacturers produced DES, whereas six manufacturers produced blasting caps); *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa.Super. 9, 23, 495 A.2d 963, 970 (1985) (plaintiff fails to aver that the twelve defendants comprise the entire industry of manufacturers of tire rim parts); *Vigiolto,* 643 F.Supp. at 1459 (plaintiff fails to allege that named defendants represent substantially all manufacturers of asbestos between 1943–1945). *But see Centrone v. C. Schmidt & Sons, Inc.,* 114 Misc.2d 840, 452 N.Y.S.2d 299, 303 (1982) (recognizing a cause of action based on enterprise liability).