Marianne E. FLETCHER, Nancy L. Bartley, Raphael Paganelli, and Charlotte Evans, Plaintiffs,

v.

ATEX, INC. and Eastman Kodak Company, Defendants.

Jenny L. HERMANSON, and Christy Scattarella, Plaintiffs,

v.

805 MIDDLESEX CORP., formerly known as Atex, Inc., Eastman Kodak Company, and Apple Computers, Inc., Defendants.

Nos. 92 Civ. 8758 (MEL), 94 Civ. 1272 (MEL).

United States District Court, S.D. New York.

Aug. 17, 1994.

Levy, Phillips & Konigsberg (Steven J. Phillips, Alani Golanski, Danielle M. Goodman, Caroline Tso, of counsel), New York City, for plaintiffs.

Nixon, Hargrave, Devans & Doyle (Thomas E. Reidy, Flor M. Ferrer–Colon, Daniel J. Hurteau, of counsel), Rochester, NY, for defendants.

LASKER, District Judge.

The plaintiffs in these actions allege a variety of soft tissue and other injuries, including "carpal tunnel" syndrome, which they contend were caused by the repetitive stress involved in the use of keyboards manufactured by Atex, Inc., now known as 805 Middlesex Corp.

■ Eastman Kodak Company, Atex's parent company, moves for summary judgment dismissing all claims against it in both actions. Kodak's identical motion in related cases pending in state court was recently granted. *King v. Eastman Kodak Co.*, No. 23439/92 (N.Y.Sup.Ct. Jun. 9, 1994). However, the decision in *King* is not binding on the plaintiffs in the instant case because they were not party to the state court determination. *Expert Elec. Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

The plaintiffs allege that Kodak is liable for their injuries even though Kodak did not manufacture the Atex keyboards because i) Atex was merely Kodak's alter ego or instrumentality; ii) Atex represented that Kodak participated in the manufacture of the key-

boards; iii) Kodak acted in tortious concert with Atex; and iv) Atex was Kodak's agent.

*Alter Ego Liability*

■ Under New York choice of law principles, "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993). Since Atex was incorporated in Delaware, its law controls on this issue.

Under Delaware law, "a court can pierce the corporate veil of an entity where there is fraud *or* where [it] is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch.1992) (emphasis added); *see also Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D.Del.1990), *aff'd*, 932 F.2d 959 (3d Cir.1991) (recognizing alter ego theory as "something of a new development in the Delaware [state] courts").

The plaintiffs contends that Atex is merely Kodak's instrumentality or alter ego because Atex participated in Kodak's centralized cash management system, Atex was insured under Kodak's liability insurance policy, Kodak's Annual Report for 1986 and a 1990 Atex software manual erroneously describe Atex as part of a "division" of Kodak, and a 1985 promotional publication by Atex states incorrectly that Atex "merged" with Kodak in 1981, instead of becoming Kodak's subsidiary. Plaintiffs also argue that Kodak unduly dominated its subsidiary's affairs because a number of Kodak employees sat on Atex's board of directors, Atex employees regularly met with Kodak employees to discuss general business matters, and Atex could not undertake major capital expenditures, execute real estate leases, or sell stock without Kodak's approval.

Under Delaware law, a subsidiary may be regarded as its parent's alter ego if the corporations "operate[ ] as a single economic entity such that it would be inequitable ... to uphold a legal distinction between them." *Mabon, Nugent & Co. v. Texas American Energy Corp.*, 1990 WL 44267, at *4 (Del.Ch. Apr. 12, 1990). However, "[d]isregard of the corporate entity is appropriate only in exceptional circumstances." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 270 (D.Del.1989).

■ The factors to be analyzed in determining whether Atex and Kodak indeed "operated as a single economic entity" include:

whether the [subsidiary] was adequately capitalized for the corporate undertaking; whether [it] was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Harco Nat. Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, *4 (Del.Ch.1989) (citing *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del.1988)).

Plaintiffs' claim of undue domination, when measured by this standard, is not persuasive. While it appears that Kodak and Atex are indeed close, the subsidiary possesses sufficient indicia of a separate corporate existence that it cannot be viewed as a mere instrumentality of Kodak. Plaintiffs, for example, have not challenged Kodak's representations that both companies observed corporate formalities at all times, that Atex managed its own day to day affairs, and that between 1981 (when Kodak acquired Atex) and 1992 (when Atex sold substantially all its assets to a third party), only one director of Kodak sat simultaneously as a director of Atex. During that period, the number of directors on Atex's board ranged from two to eight.

Atex's participation in Kodak's cash management system is consistent with sound business practice and does not show undue domination or control. *See Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F.Supp. 831, 843 (D.Del.1978) (upholding corporate veil despite cash management program for subsidiary); *In re Acushnet River & New Bedford Harbor Proceedings*, 675 F.Supp. 22, 34 (D.Mass.1987) ("A centralized cash management system, where the accounting records always reflect the indebtedness of one entity to another, is not the equivalent of intermingling funds.").

Similarly, it is entirely appropriate for a parent corporation to approve major expenditures and policies involving the subsidiary, and for employees of the parent and subsidiary corporations to meet periodically to discuss business matters. *Akzona, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 238 (D.Del.1984) (upholding veil even though "the parent had 'general executive responsibilities' for the operations of the subsidiary, approved major policy decisions, guaranteed [its] bank loans and worked closely with [it] on approving decisions.")

Finally, the erroneous descriptions of the relationship between Atex and Kodak in the corporations' promotional literature do not justify piercing the corporate veil. Plaintiffs have isolated only three such misstatements in the voluminous material presented—too few to support an inference that they reflect the defendants' true state of mind about their corporate relationship. *See Coleman v. Corning Glass Works*, 619 F.Supp. 950, 956 (W.D.N.Y.1985), *aff'd*, 818 F.2d 874 (Fed.Cir. 1987) (upholding separate corporate existence despite "loose language" in parent corporation's Annual Report about a "merger" with the subsidiary, and parent's reference to subsidiary as a "division").

In sum, the elements identified by the plaintiffs, when considered in the light of the uncontroverted factors of independence cited by Kodak, are insufficient as a matter of law to establish the degree of domination necessary to disregard Atex's corporate identity.

Moreover, "the case law implies that, even under the alter ego theory, Delaware courts will not disregard separate legal entities absent a showing that equitable considerations require such action." *Harper*, 743 F.Supp. at 1085–86; *see also Harco Nat. Ins. Co.*, 1989 WL 110537, *4 ("overall element of injustice or unfairness must always be present" (quoting *Golden Acres, Inc.*, 702 F.Supp. at 1104)); *Mabon, Nugent & Co.*, 1990 WL 44267, at *4 (veil piercing appropriate if "it would be inequitable . . . to uphold a legal distinction" between the corporations). The plaintiffs, however, have made no showing that upholding Atex's separate legal existence is unjust. Accordingly, Kodak's motion

for summary judgment is granted with regard to this claim.

*Apparent Manufacturer Doctrine*

Section 400 of the Restatement (Second) of Torts provides that:

> One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.

Restatement (Second) of Torts § 400 (1965). Plaintiffs contend that Kodak is liable under this rule because "the pervasive use by Atex of the Kodak name, both in its packaging of Atex equipment and in advertisement and promotional materials, held out to the world the assurances associated with the Kodak name and suggested to purchasers and ultimate users that Kodak was significantly involved in the manufacture of the Atex products." (Mem.Opp. 10). The plaintiffs' case with regard to this claim is presented on New York law.

Section 400 of the Restatement is titled "Selling as Own Product Chattel Made by Another." It appears as one provision in Topic 4 of Chapter 14 of the Restatement titled "Sellers of Chattels Manufactured by Third Persons." Comment (a) to Section 400 states that the words in Section 400 " 'one who puts out [ . . . ] a chattel' include anyone who supplies it to others . . . by sale or lease or by gift or loan." There is no indication in the Restatement that Section 400 was intended to apply to a party which is not a seller of chattel, or is otherwise involved in the chain of distribution of a product.

Moreover, although other jurisdictions have applied Section 400 more broadly, *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 400–01, 27 Ill.Dec. 343, 350–51, 389 N.E.2d 155, 162–63 (1979), *City of Hartford v. Associated Construction Co.*, 34 Conn.Supp. 204, 384 A.2d 390, 396–97 (1978), there are no New York cases which have applied the doctrine to parties other than sellers of products manufactured by a third party. *Willson v. Faxon, Williams & Faxon*, 208 N.Y. 108, 113–14, 101 N.E. 799, 801 (1913); *Commissioners of the State Ins. Fund v. City Chem. Corp.*, 290 N.Y. 64, 69, 48 N.E.2d 262, 264–65 (1943); *Markel v. Spencer*, 5 A.D.2d 400, 409, 171 N.Y.S.2d 770, 780 (N.Y.App.Div.1958);

*Schwartz v. Macrose Lumber & Trim Co.*, 50 Misc.2d 547, 558, 270 N.Y.S.2d 875, 888 (N.Y.Sup.Ct.1966), *rev'd on other grounds*, 29 A.D.2d 781, 287 N.Y.S.2d 706 (1968).

■ The text and commentary to Section 400 of the Restatement, as well as New York case law, all suggest that in New York the apparent manufacturer doctrine only applies to a seller of a chattel, or a party otherwise involved in the chain of distribution of a product. This conclusion, though not compelled by, is supported by Justice Crane's determination made on exactly this issue in the related cases pending in state court in *King v. Eastman Kodak Co. See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (decisions of lower state courts, though not controlling on state law issues, are to be given "proper regard" by federal courts).

There is no evidence or allegation that Kodak has been involved in the selling or distribution of Atex's keyboards. Accordingly, Kodak's motion for summary judgment is granted with regard to this claim.

*Concerted Action Theory*

■ "The theory of concerted action provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in a common plan or design to commit a tortious act." *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295, 582 N.Y.S.2d 373, 375, 591 N.E.2d 222, 224 (1992) (citations omitted).

The plaintiffs contend that Kodak is liable under this theory because "at the very least, Kodak offered substantial assistance and encouragement to Atex in the production and/or marketing of its keyboards." (Mem. Opp. 13). They rely on documents showing that Kodak i) worked closely with Atex and other subsidiaries and sought to combine their strengths; ii) evaluated the ergonomics of three Atex keyboards in 1990; and iii) was aware that keyboards in general could con-

tribute to a variety of repetitive stress injuries.

However, none of this tends to show that Kodak and Atex had "an understanding . . . to participate in a common plan or design to commit a tortious act." *Rastelli*, 79 N.Y.2d at 295, 582 N.Y.S.2d at 375, 591 N.E.2d at 224. There is no evidence that Kodak actually participated in the design or manufacture of the Atex keyboards which the plaintiffs allege caused them injury. In fact, the defendants have submitted three uncontested affidavits that Kodak was not so involved. (Peter Russell Supp.Aff. ¶ 6; Frank Zaffino Aff. ¶ 5; Lawrence Matteson Aff. ¶ 6).[1]

■ Plaintiffs' evidence of Kodak's more indirect connection with Atex's affairs does not support a concerted action claim. As discussed above in relation to the theory of alter ego liability, there was nothing improper about the general business relationship between Kodak and Atex. A failed effort to pierce the subsidiary's corporate veil cannot be converted into a successful concerted action claim. *See Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 759 (7th Cir.1989) ("direct participation" theory of liability "limited to situations in which the parent corporation's control over particular transactions is exercised in disregard of the separate corporate identity of the subsidiary").

Nor does Kodak's evaluation of the Atex keyboards establish that Kodak acted in tortious concert with Atex. "It is essential that each defendant charged with acting in concert have acted tortiously." *Rastelli*, 79 N.Y.2d at 295, 582 N.Y.S.2d at 375, 591 N.E.2d at 224. The plaintiffs have not alleged that Kodak's evaluation of the keyboards was performed negligently.

■ The plaintiffs also seem to contend that because Kodak was generally aware that use of keyboards could contribute to repetitive stress injuries, it acted tortiously either by failing to prevent Atex from manufacturing the keyboards, or by failing to warn the

---

1. The defendants, in response to Interrogatory # 31, initially listed "Eastman Kodak Company" as one of 33 companies "involved in the design, manufacture, sale, marketing, leasing and/or installation of Atex keyboards." They have submitted an affidavit by counsel which states that this was an error, that it was intended to be responsive to another interrogatory, and that a corrected interrogatory answer was served on March 31, 1993. (Edward Burns Aff.). Nothing in the record supports plaintiffs' counsel's contention that the original representation was accurate.

plaintiffs about the danger. However, absent a "special relationship" between Kodak and Atex, or Kodak and the plaintiffs, Kodak had no duty to control Atex's conduct to prevent harm to the plaintiffs. Restatement (Second) of Torts § 315 (1965). The parent/subsidiary relationship is not, without more, a "special relationship" in this sense, *see In re Birmingham Asbestos Litig.*, 997 F.2d 827, 828 (11th Cir.1993) (applying Alabama law), and no allegation has been made that there was such a relationship between Kodak and the plaintiffs.

Accordingly, Kodak's motion for summary judgment is granted with regard to this claim.

*Agency Theory*

■ The plaintiffs also contend that Kodak is liable because Atex was Kodak's agent. This claim is based on a statement in an unidentified 1988 document issued by Electronic Pre–Press Systems, Inc. that it "serve[d] as Kodak's primary agent" to supply a variety of products and services to the printing and publishing industries, and on a statement in a 1990 Atex software manual that "Atex is an unincorporated division of Electronic Pre–Press Systems, Inc., a Kodak company."

■ It is true that principals are liable for the tortious acts of their agents. 3 N.Y.Jur.2d, Liability for Torts of Agent §§ 253–257 (1980). However, the statements plaintiffs rely on are not evidence of an agent-principal relationship between Atex and Kodak. An agent's authority to act on behalf of a principal, whether actual or apparent, "depends on verbal or other acts *by a principal* which reasonably give an appearance of authority." *Greene v. Hellman,* 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80, 412 N.E.2d 1301, 1306 (1980) (emphasis added). The unauthorized representations of the agent do not bind the principal. *See* 2 N.Y.Jur.2d, Limitations on Apparent Authority § 86 (1980). Since there is no evidence that Kodak authorized the statements plaintiffs rely on, the claim that Kodak is liable for Atex's conduct as its principal fails.

CONCLUSION

Kodak's motions for summary judgment in these actions are granted and plaintiffs' complaints against Kodak are dismissed. It is so ordered.