■ SAMANTHA PENN, Respondent, v JAROS, BAUM & BOLLES et al., Appellants, et al., Defendants. CITY OF NEW YORK, Third-Party Plaintiff, v THE DEPOSITORY TRUST & CLEARING CORPORATION et al., Third-Party Defendants, and THE DEPOSITORY TRUST COMPANY, Third-Party Defendant-Respondent. (And Other Actions.) [809 NYS2d 6]—

Order, Supreme Court, New York County (Doris Ling-Cohan, J.), entered January 19, 2005, which, inter alia, wholly or partially denied the motions for summary judgment to dismiss the complaint as against defendants Jaros, Baum & Bolles (JBB); Kidde/Kidde-Fenwal; Skidmore, Owings & Merrill (SOM); and S&S Fire Suppression Systems, unanimously affirmed, without costs or disbursements.

Plaintiff's decedent was locked in a bank vault after regular business hours at her place of work. Unable to obtain assistance by telephone, she pulled a fire alarm. Unfortunately, the alarm also activated a carbon dioxide suppression system, which quickly filled the vault with gas that led to her death. There are questions of fact as to the potential liability of each of the myriad parties to this lawsuit.

Kidde-Fenwal was the manufacturer of some of the components in the alarm system, including the electrical remote pull box activated by decedent and the master discharge cylinders that initiated discharge of the gas. While the components worked in the intended manner, there was no notice indicating that pulling the alarm would also activate the release of $CO_2$ gas. Kidde contends that it had no responsibility to place warning labels on the alarm. However, Kidde was aware, at a minimum, that the alarm could be used in conjunction with a $CO_2$ suppression system. Unlike the situation in *Rastelli v Goodyear Tire & Rubber Co.* (79 NY2d 289 [1992]), the components acted in the manner in which they were intended, and in conjunction with a suppression system that operated as it was intended. Thus, Kidde cannot claim that its parts were used improperly. We note, moreover, the deposition testimony that the pull box violated federal and industry standards regarding warning labels, and that three years before the incident, Kidde began providing such labels to be attached to the switch.

JBB, which designed the suppression system, contends that since the system passed inspection, there must have been compliance with whatever warnings that were required. However, JBB has not demonstrated that appropriate warnings were provided. JBB argues simply that it directed the installer to post designating signs required by authorities. There is no showing that a sign, alerting the decedent or any other potential user to the specific consequences of utilizing the alarm in a closed vault without an escape mechanism, should not have

been displayed. It cannot be said, as a matter of law, that decedent's death was unforeseeable under the circumstances.

S&S, the service contractor that performed inspections, argues that it did not assume exclusive responsibility for the operation of the system, and thus could not be liable to an anticipated user such as the decedent (*see e.g. Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579 [1994]). Nevertheless, as the party responsible for keeping the system in working order by means of its presumably trained personnel, it was in a position to advise that appropriate signs should be implemented. Even more than the building employees, the S&S workers were in the best position to appreciate the consequences of the absence of a warning sign. The fact that S&S did not have the final say in making upgrades to the system does not mean that it did not assume primary responsibility for the effective operation of the system, and effective operation would suggest the placement of suitable warnings.

SOM designed the vault itself, and asserts that it could not have been negligent because the fire suppression system was installed after the plans for the vault were complete. But even if the vault had been designed first, the absence of an escape mechanism made it foreseeable that an individual could be trapped inside. Whether such a device should have been installed is a question of fact. Furthermore, whether SOM would be entitled to indemnification from a party that requested a vault without an escape mechanism is an issue different from any responsibility SOM might have had to potential users such as the decedent. For instance, it is not unforeseeable that an individual trapped in a vault without an escape hatch could suffer a heart attack from stress. Thus, the question of SOM's liability transcends the issue of when the plans for the vault were completed. Concur—Mazzarelli, J.P., Friedman, Sullivan, Williams and Gonzalez, JJ.