In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

Bankruptcy No. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, Western Division.

June 9, 1995.

Edmund J. Adams, Frost & Jacobs, Cincinnati, OH, for debtors in possession.

Neil T. Leifer, Thornton, Early & Naumes, Boston, MA, for claimants.

### DECISION ON MOTION FOR SUMMARY JUDGMENT ON LeBLANC, SANTIAGO and NICHOLS CLAIMS

BURTON PERLMAN, Bankruptcy Judge.

Certain claims relating to alleged liability for lead paint injury have been filed in these consolidated bankruptcy cases. Eagle–Picher Industries, Inc., hereafter referred to as "debtor," has filed a motion for summary judgment against these claimants. Involved are claims 4350, 4351, and 4352, filed by Richard Van Nostrand on behalf of Heath LeBlanc, Lisa LeBlanc, and Nathan Martin (collectively, the "LeBlanc claimants"); claim 4353 filed by Monica Santiago; and claims 4347, 4348, and 4349 filed by Mary D. Nichols on behalf of Mary Spriggs, Victoria Spriggs, and Michael Spriggs (collectively, the "Nichols claimants"). Hereafter, the term "claimants" will be used to refer to all those who are subject of the seven just identified claims. Monica Santiago pursued a claim for lead paint liability in a federal court, the final disposition of that claim being reported at *Santiago v. Sherwin Williams Co.*, 3 F.3d 546 (1st Cir.1993).

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (B).

With its memorandum in support of its motion, debtor has submitted the affidavit of John E. Iole, which serves as a vehicle to present a number of exhibits and legal authorities. The exhibits relate to prior litigation conducted by litigants in seeking relief for lead poisoning.

Claimants then filed a memorandum in opposition to debtor's motion for summary judgment. With their memorandum, they filed the affidavit of Neil T. Leifer, their attorney. In his affidavit Leifer states that submitted with the memorandum are Exhibits 1 through 141 which comprise a "copy of the same set of Exhibits duly authenticated and submitted by Ms. Santiago as part of her Opposition to the Motion for Summary Judgment in her claim pending in the District of Massachusetts."

Finally, with its reply memorandum, debtor submitted the following: Exhibit A, an excerpt from the General Rules of the Massachusetts Supreme Court; Exhibit B, a decision *Guest Quarters Hotels Ltd. Partnership v. Kaufman*, No. 90–10671–Z, 1990 WL

98407, 1990 U.S.Dist. LEXIS 8678 (D.Mass. July 6, 1990); Exhibit C, a docket sheet showing the course of certain legislation in the U.S. Congress relative to market share liability; Exhibit D, a decision *Jackson v. The Glidden Co.*, No. CV–236835 (Ohio App. Dec. 8, 1994); and Exhibit E, a copy of plaintiff's memorandum in opposition to a motion for summary judgment by the industry defendants in the *Santiago* case in Santiago's prior federal litigation.

### 1. Collateral Estoppel.

■ It is the position of debtor that the Santiago claimant is collaterally estopped by the *Santiago* case from pursuing her present claim. Debtor was initially a co-defendant in that litigation. Prior to the time that summary judgment was granted to defendants therein, debtor's bankruptcy case was filed, whereupon the automatic stay of 11 U.S.C. § 362 came into play so that further action by plaintiff against debtor could not occur. As the material provided to us on this motion shows, plaintiff in that case did conduct extensive discovery of debtor before the bankruptcy filing, and conducted virtually no discovery in the case thereafter.

■ It is a long standing principle in American law, decided by the U.S. Supreme Court in the pivotal case *Blonder–Tongue Laboratories Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), that a plaintiff may be prohibited from proceeding against a defendant in a subsequent lawsuit by the doctrine of collateral estoppel even though the defendant in the second lawsuit was not a party in the first lawsuit. In other words, the requirement of mutuality of estoppel as a prerequisite to the preclusion is not required. (*See Blonder–Tongue*, at 320–27, 91 S.Ct. at 1438–42.) We believe that the holding of *Blonder–Tongue* precludes Santiago here, for the facts in the case before us are even more compelling than those in *Blonder–Tongue*. Here, debtor was a party to the prior litigation and played an important role prior to its bankruptcy filing. It is entitled to the benefit of the Santiago holding.

Debtor is entitled to summary judgment on this ground against Santiago.

### 2. Market Share.

■ It is clear from the record presented to the court on the present motion, that claimants are unable to prove a tort case against debtor in a traditional fashion, that is, by establishing that the lead poisoning they suffered was due to a product negligently produced and sold by debtor. Consequently, claimants rely upon an alternative tort theory, market share liability. That theory involves allocating liability without regard to whether the particular product originated with a particular producer; instead, liability is imposed upon an entire industry, each member of the industry being liable in proportion to the share of the market of the injurious product which it sold.

On the present motion, debtor asserts that the law of the State of Massachusetts must be applied to the tort claims of the several claimants, and under that law market share liability is not recognized. Claimants do not dispute that it is the law of Massachusetts which is to be applied, but they assert that that law is unsettled and it would be improper for this court to bar these claimants from proving a case on a theory of product liability. Claimants ask either that the motion be denied and they be allowed to proceed, thus, in effect, recognizing the applicability of the market share theory of liability, or that we certify the question to the Supreme Judicial Court of Massachusetts. Clearly, so far as this branch of debtor's motion is concerned, what is presented is a pure question of law.

While the Supreme Judicial Court of Massachusetts has not expressly decided the question of the availability of market share liability in a lead poisoning case, as we have seen, one of these claimants, Santiago, pursued such a claim in the federal courts in the First Circuit, culminating in *Santiago v. Sherwin Williams Co.*, 3 F.3d 546 (1st Cir. 1993). We have had occasion earlier in this decision to consider that report for its preclusive effect. We refer to it now for a different purpose. The decision, of course, does not bind this court which sits in a Circuit other than the First Circuit. Our task here is to decide whether the case is persuasive in its

reading of Massachusetts law. We have concluded that this court should follow that decision. In reaching this conclusion, we are impressed particularly with the following cogent statements:

> We accept for the sake of argument plaintiff's assertions (1) that the SJC [Supreme Judicial Court of Massachusetts] would, in some circumstances, relax the identification requirement and allow a plaintiff to recover under a market share theory; (2) that the SJC would recognize market share liability in the lead poisoning context; (3) that plaintiff has introduced sufficient evidence for a reasonable factfinder to infer that her injuries resulted from lead poisoning; (4) that lead paint was, as one of plaintiff's experts puts it, at least "a substantial contributing factor of her lead poisoning"; and (5) that defendants, who were mere bulk suppliers of white lead and did not manufacture or market the alleged injury-causing paint, could still be adjudged to have acted negligently towards plaintiff. Nonetheless, we believe that the SJC's professed interest in both holding wrongdoers liable only for the harm they have caused and in separating tortfeasors from innocent actors is fatal to plaintiff's claim.

and at p. 551:

> In sum, allowing plaintiff to recover her full damages from the five named defendants despite her inability to specify the time of their negligence may well, on this record, do violence to the SJC's stated interest in ensuring that wrongdoers be held liable only for the harm they have caused. It also would create a substantial possibility that tortfeasors and innocent actors would be impermissibly intermingled. The SJC has made it abundantly clear that it would not countenance either result. Accordingly, mindful that federal courts sitting in diversity at a plaintiff's election ought not "steer state law into unprecedented configurations," see Martel [v. Stafford], 992 F.2d at 1244 [ (1st Cir. 1993) ], we affirm the district court's grant of summary judgment to defendants on plaintiff's market share claim. [footnote omitted]

■ Thus, we find the reasoning of the First Circuit in the Santiago case persuasive in its conclusion that market share liability is not available under Massachusetts law. Claimants, however, urge that it would be a sounder course to certify the question to the SJC itself. In Transamerica Insurance Co. v. Duro Bag Manufacturing Co., 50 F.3d 370, 372 (6th Cir.1995), our Court of Appeals recently spoke on the question. There, in refusing to certify a question to the Kentucky Supreme Court, the court said:

> Although Kentucky has not addressed the exact question at issue, it does have well-established principles to govern the interpretation of insurance contracts.

That language has a direct application here, for in the Santiago case, the First Circuit Court of Appeals found that while the Supreme Judicial Court of Massachusetts had not decided the specific question of the allowability of market share theory, it did find that that court had "well-established principles" which could be applied to reach a reasoned conclusion as to what might be expected from that court. We therefore decline to certify the question as requested.

Debtor is entitled to summary judgment on the ground that market share liability for lead poisoning is not available in Massachusetts.

### 3. Concert of Action.

■ While claimants chide debtor in their responsive memorandum for, in their view, failing to deal with the concert of action basis of liability which they assert (an assertion which debtor disputes by reason of its comment at page 10, footnote 3 of its memorandum-in-chief), claimants fail in their memorandum to set forth a justification for concert of action liability of debtor. Absent is any assertion that claimants can offer evidence that alleged concert of action by debtor with others caused lead paint to be applied to the walls of their homes. In the absence of an offer to produce such evidence, a concert of action claim must fail because a showing of proximate cause is vital to making out such a claim. Santiago at p. 552.

We conclude that debtor is entitled to judgment on this ground of its motion as well.