Connolly, J.
INTRODUCTION
Plaintiff, John Russo, a USAir flight attendant, brought this personal injury action against defendants Material Handling Specialties Co. (“Material Handling”), McPaul Metals Products, Inc. (“McPaul”), and Magee Plastics Co. (“Magee”) for injuries allegedly suffered when an airline beverage cart struck him in the groin. In particular plaintiffs complaint alleges negligence (Count I), negligent design and sale (Count II), breach of implied and express warranties of merchantability (Count III), failure to warn (Count IV), and failure to recall (Count V).
Defendants McPaul and Magee now move to dismiss plaintiffs complaint for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). Additionally, all defendants now move for summary judgment under Mass.R.Civ.P. 56. For the reasons set forth below, this court allows the defendants’ McPaul and Magee motions to dismiss and denies defendant Material Handling’s motion for summary judgment.
BACKGROUND
On June 6, 1988, plaintiff, a resident of Massachusetts, was working as flight attendant for USAir, a Pittsburgh based airline. While working on a flight from Pittsburgh to Chicago, plaintiff allegedly was injured when an unsecured beverage cart struck him in his groin. The injuries allegedly occurred when the aircraft flew into an area of air turbulence. The beverage cart which was unsecured began to roll. The run-a-way cart struck the plaintiff in the groin. Beverage service was discontinued due to the air turbulence. As plaintiff was attempting to secure the beverage cart in the proper storage space, the cart again rolled into plaintiffs groin.
At the time of the accident, USAir had approximately 250 beverage carts in use on its planes. Although it is unknown how many separate manufacturers supplied beverage carts to USAir, USAir acknowledges that Material Handling and another manufacturer supplied seventy-eight of the carts.
Material Handling, McPaul, and Magee are all Pennsylvania corporations with their principal places of business in Pennsylvania. All three companies were involved in the manufacture and/or sale of beverage carts to USAir.
Between 1983 and 1993, Magee’s total revenue from sales in Massachusetts was $215 for three sample window shades ordered by a Massachusetts company in 1987. During that same period, Magee also purchased from Massachusetts companies: (1) $6,570 in plastic sheeting; (2) two sample lights for $99; and (3) $462 worth of elastic cords.
McPaul’s only contacts with Massachusetts companies has been the purchase of one item from the National Fire Protection Association in Quincy and the purchase of workers compensation insurance from a Massachusetts insurance company.
DISCUSSION
I. The Motions to Dismiss
Defendant McPaul and Magee contend that this court lacks personal jurisdiction because defendants do not fall within the reach of the Massachusetts Long Arm Statute. Even if defendants McPaul and Magee do fall within the reach of the long arm statute, the exercise of this court’s jurisdiction over defendants would violate the Due Process Clause of the Four *289 teenth Amendment. When a defendant alleges that a court lacks personal jurisdiction, “plaintiff had the burden of establishing facts [showing] that the ground relied on under G.L. 223A, §3 is present.” Tatro v. Manor Care Inc., 416 Mass. 763, 765 (1994). In pertinent part G.L.c. 223A, §3 provides that:
A court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person’s . . . (c) causing tortious injuiy by an act or omission in this commonwealth, or (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business or engages in any other persistent course of action, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth.
Plaintiff contends that under the facts of this case this court has personal jurisdiction over defendant McPaul and Magee under both §§3(c) and 3(d). To support its contention under §3(c) plaintiff presents two alternative arguments. First, plaintiff asserts that the injury occurred somewhere in the air between Massachusetts and Illinois. Plaintiff insists that because it is unknown over which state the plane was flying when the injury occurred, the injuiy cannot be said to not have occurred in Massachusetts. Alternatively, plaintiff submits that defendants McPaul and Magee had a duty to warn that the brakeless carts were defective and that defendants failure to warn constitutes an omission in the Commonwealth sufficient to satisfy §3(c).
In short, neither argument persuades this court. First there are no facts before this court indicating that the flight from Pennsylvania to Illinois passed through the airspace above Massachusetts. Moreover, even if the plane did fly through the airspace above Massachusetts, plaintiff does not meet his burden of establishing facts showing that the act causing plaintiffs injury occurred in Massachusetts. Likewise, plaintiff fails to present any facts showing how, or why, defendants McPaul and Magee, two Pennsylvania corporations, would have a duty to warn USAir, another Pennsylvania corporation, in Massachusetts. Plaintiffs arguments under c. 223A, §3(c) are not persuasive.
Next, plaintiff argues that defendants McPaul and Magee satisfy the requirements of §3(d). In asserting that McPaul falls within the reach of the Massachusetts Long Arm Statute, plaintiff points to the facts that in 1991 McPaul purchased an item from the National Fire Protection Association located in Quincy, Massachusetts, and that McPaul also purchased workers’ compensation insurance from a Massachusetts insurance company. Likewise, plaintiff asserts that Magee’s purchases of various plastic products from various Massachusetts business over the past ten years brings Magee within the grasp of §3(d).
Section 223A, §3(d) provides that a court may exercise personal jurisdiction over a person if that person’s actions:
caus[e] tortious injury in the commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.
As noted above, plaintiff bears the burden of showing facts which establish this court’s jurisdiction. Tatro v. Manor Care Inc., supra. Assuming arguendo that the acts or omissions of defendants McPaul and Magee outside of Massachusetts caused plaintiffs injuries, this court concludes that the facts submitted by plaintiff are insufficient to satisfy the second prong of c. 223A, §3(d). See Heins v. Wilhelm Loh Weitzlar Optical Machinery GmbH & Co. KG., 26 Mass.App.Ct. 14, 19-21 (1988). At most the facts submitted by plaintiff show that McPaul and Magee purchased various material and services in Massachusetts. These facts, standing alone, do not show that defendant McPaul and Magee “regularly [did] or solicit[ed] business, or engage[d] in any other persistent course of conduct, or derive[d] substantial revenue from goods used or consumed or services rendered in this commonwealth.” Id., quoting G.L.c. 223A, §3(d).
In sum, this court concludes that plaintiff fails to meet his burden of showing facts sufficient to satisfy G.L.c. 223A, §§3(c) or 3(d). Accordingly, this court lacks personal jurisdiction over defendants McPaul and Magee.
II. Material Handling’s Motion for Summary Judgment
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence ‘that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, at 17. “[T]he opposing party cannot rest on his or her pleadings and *290 mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Defendant Material Handling contends that it cannot be held liable to plaintiff because he is unable to identify Material Handling as the manufacturer or distributor of the cart which allegedly caused his claimed injuries. In support of its argument, defendant Material Handling relies on Mathers v. Midland-Ross Corp., 403 Mass. 688 (1989), which held that “a plaintiff who sues a particular manufacturer for product liability generally must be able to prove that the item which it is claimed caused the injury can be traced to that specific manufacturer.” Id. at 691. Defendant maintains that plaintiff cannot trace it to the cart which struck him because its product was created from a generic design, lacked model or serial numbers, and did not have a label stating “stow and secure during takeoff, landing and turbulence.” Plaintiff contends that this court should apply an alternative liability, enterprise liability, or market share liability theory because he is unable to identify the manufacturer of the cart.
A. Market Share Liability
The Supreme Judicial Court has held that identifying the “party responsible for causing injury to another is a longstanding prerequisite to a successful negligence action.” Payton v. Abbott Labs, 386 Mass. 540, 571 (1982). Indeed, in the context of products liability cases, the court has refused to find liability when a plaintiff is unable to link a product to a specific manufacturer. See, e.g., Enrich v. Windmere Corp., 416 Mass. 83, 86 (1993) (finding no liability because name on instruction booklet was insufficient to identify defendant as fan’s manufacturer); Mathers, 403 Mass. at 690 (finding no liability because radical departure from standard design of machine did not identify defendant as manufacturer). Identification allows courts to “separate! ) wrongdoers from innocent actors” and “ensure[ ] that wrongdoers are held liable only for the harm that they have caused.” Payton, 386 Mass. at 571.
The Supreme Judicial Court, however, stated that it may recognize “some relaxation of the traditional identification requirement in appropriate circumstances” and permit plaintiffs to recover from negligent defendants based on a market share liability theory. Id. at 574. Market share liability developed because several jurisdictions recognize that “the field of products liability has been changed drastically with the advent of mass production of fungible goods and complex marketing methods.” McCormack v. Abbott Laboratories, 617 F.Supp. 1521, 1525 (D. Mass. 1985). Because “consumers may be harmed by a product not traceable to a specific producer,” various federal and state courts around the country reason that the “traditional tests of liabiliiy are insufficient to govern the obligations of manufacturer to consumer in such situations, and some adaptation of the rules of causation and liability seems appropriate.” id.; see Sindell v. Abbott Laboratories, 607 P.2d 924, 936 (Cal.), cert. denied, 449 U.S. 912 (1980). Thus, several jurisdictions find that a market share liability theory is appropriate in certain products liability cases where identifying the specific wrongdoer is impossible. See, e.g., Morris v. Parke, Davis & Co., 667 F.Supp. 1332, 1342 (C.D. Cal. 1987) (applying market share liability where harm caused by DPT vaccine); Conley v. Boyle Drug Co., 570 So.2d 275, 283 (Fla. 1990) (applying market share liability where cancer caused by DES); Smith v. Cutter Biological, Inc., 823 P.2d 717, 727 (Haw. 1991) (applying theory where blood product contained HIV virus).
Courts recognizing market share liability have articulated similar justifications for allowing a recovery by plaintiffs unable to identify the specific wrongdoer. In a DES case, for instance, a United States District Court for the District of Massachusetts emphasized that the plaintiff was not at fault for the lack of identification evidence because the drug was produced in a generic form, drug companies and pharmacies did not keep or were unable to locate pertinent records, and the delay in the drug’s effect “played a significant role in the unavailability of proof.” McCormack v. Abbott Laboratories, supra at 1525. Furthermore, the court recognized that all the defendants shared a degree of culpability in producing and marketing an allegedly defective drug that posed a risk of injury to the public. Id. In addition, the court found that, because of the magnitude of the physical and psychological injuries caused by DES, drug companies are in a better position to absorb the cost of injury than the plaintiff, who would otherwise bear the burden alone. Id. at 1526; see also Sindell, 607 P.2d at 936; Martin v. Abbott Laboratories, 689 P.2d 368, 381-82 (Wash. 1984). Imposing market share liability gives manufacturers the incentive to create safe products and encourages them to either make their products identifiable or improve their record keeping procedures. McCormack, 617 F.Supp. at 1528.
The case at bar presents an appropriate circumstance in which to recognize a cause of action based on a market share liability theory. Plaintiff, through no fault of his own, cannot identify the manufacturer of the beverage cart which struck him. Defendant Material Handling established that its beverage carts are based on a generic design and, therefore, are difficult to distinguish from another manufacturer’s product. Although there was no delay between the time plaintiff used the cart and the manifestation of his alleged injury, it is undisputed that there is no way to identify the manufacturer of the cart. In its answers to plaintiffs second set of interrogatories, defendant Material Handling admitted that it did not place any model or serial numbers on its product. Furthermore, both plaintiff, through affidavit testimony, and Charles W. Story, through deposition testimony, *291 stated that the airline has no tracking system by which the manufacturer of the cart can be identified.
Because expert witness Daniel Harwood’s affidavit opinion that the brakeless carts were inherently dangerous and defective is undisputed, defendant Material Handling shares a degree of culpability with other manufacturers in producing a product which posed a danger to plaintiff and the public. Defendant Material Handling should bear the financial burden of plaintiffs injuries, including the removal of his right testicle and sympathetic nerve blocks, because it is in a better position to absorb the costs of his injuries. Finally, since defendant Material Handling is ultimately in control and is familiar with records and documents that could identify the manufacturer of the cart, Material Handling is in a better position to identify the cart’s manufacturer. There is no way for plaintiff to make such a determination.
The cases on which defendant Material Handling relies to establish that plaintiff is required to identify it as the manufacturer of the cart are distinguishable from the case at bar. In Enrich v. Windmere Corp., 416 Mass. 83, 86 (1993), although the defendant was not liable because the evidence was insufficient to infer that it was the manufacturer of the fan that allegedly caused a fire, there is no evidence that the manufacturer based the product on a generic design like the beverage cart. See id. Likewise, the defendant in Mathers v. Midland-Ross Corp., 403 Mass. 688, 690 (1989), was not liable because the slitter-rewinder which caused the plaintiffs injury was not based on a generic design, but rather “constituted a radical departure” from its standard design. Id. Further, although Massachusetts has required individualized proof of identify to support a presumption based upon statistical probability, Smithv. Rapid Transit, Inc., 317 Mass. 469 (1945), “tort law is a continually expanding field” in which it becomes necessary to “adopt[] new rules of causation, for otherwise innocent plaintiffs would be left without a remedy.” Smith v. Cutter Biological, Inc., 823 P.2d 717, 724 (Haw. 1991).
This court adopts the market share liability standard employed by the state of Washington because it is consistent with the concerns articulated by the Supreme Judicial Court. See McCormack, supra at 1526. Under this standard, a plaintiff unable to meet the traditional identification requirement must prove the following elements by a preponderance of the evidence: (a) that the plaintiff used the product; (b) that the product caused the plaintiffs subsequent injuries; (c) that the defendant produced or marketed the type of product used by the plaintiff; and (d) the defendant acted negligently in producing or marketing the product. See id.; Martin v. Abbott Laboratories, 689 P.2d 368, 382 (Wash. 1984). Individual defendants may exculpate themselves from liability by proving by a preponderance of the evidence: (1) that they did not produce or market the particular type of product used by the plaintiff; (2) that they did not market the product in the relevant geographic market area; or (3) that they did not distribute the product during the time period that plaintiff used it. See McCormack, 617 F.Supp. at 1526; Martin, 689 P.2d at 382.
Defendants unable to exculpate themselves from liability become part of the market “as narrowed and defined on a case-by-case basis by the specificity of evidence as to geographic market area, time of use,” and physical characteristics of the product. McCormack, 617 F.Supp. at 1526-27. When it is not possible to derive accurate distribution figures by geographic market area, then county, state, or national figures maybe used to define the market. George v. Parke-Davis, 733 P.2d 507, 512 (Wash. 1987). There is a presumption that all remaining defendants have equal shares of the market. However, if a defendant establishes by a preponderance of the evidence its actual market share “in the plaintiffs particular geographic market during the time period in question,” then the defendant “will only be liable for the portion of the total judgment represented by such share.” McCormack, 617 F.Supp. at 1527. Defendants unable to prove actual market share “will be liable equally for the remaining market.” Id. If all defendants prove their actual market share, the plaintiff may not recover the remaining unclaimed share of the market. Id.
The market share liability standard adopted by this court is consistent with Massachusetts’ policy to hold wrongdoers responsible only for the harm that they have caused. See id. at 1527; Martin, 689 P.2d at 382. By allowing actual market share evidence, the Supreme Judicial Court’s concern for not distorting a defendant’s liability is met. See Payton v. Abbott Labs, 386 Mass. 540, 573 (1982) (rejecting Sindell’s substantial share requirement as holding defendants liable for more harm than they caused). Furthermore, initially defining the market in terms of the smallest geographic region increases the likelihood that liability will be imposed only on defendants who caused harm. See Conley v. Boyle Drug Co., 570 So.2d 275, 284 (Fla. 1990); George v. Parke-Davis, 733 P.2d 507, 512 (Wash. 1987).
Summary judgment must be granted in a market share liability case when the plaintiff is unable to prove that the defendant manufactured or marketed the product which caused harm. See Santiago v. Sherwin-Williams Co. (Santiago I), 782 F.Supp. 186, 195 (D. Mass. 1992), aff'd on other grounds, 3 F.3d 546 (1st Cir. 1993). When there is evidence that a defendant was not the manufacturer or marketer of a product, market share liability does not apply. See id. (market share liability not applicable to bulk suppliers of lead paint pigment). Market share liability applies only to manufacturers or marketers because they “control all of the risks that their products may have presented to the public.” See id.
*292 Defendant Material Handling states that it did not place a label on its carts stating “stow and secure during takeoff, landing and turbulence.” Furthermore, defendant Material Handling claims that another manufacturer places a label on the carts, and therefore, is the manufacturer of the cart which struck plaintiff. Defendant Material Handling, however, has not presented evidence rebutting the possibility that USAir placed the label on the cart since plaintiff saw it on every cart he worked with during his three years as a flight attendant. Moreover, defendant Material Handling sold carts manufactured by McPaul. There is no evidence in the record that McPaul did not place these labels on its carts. Hence, when considering the summary judgment record in the light most favorable to the nonmoving party, Defendant Material Handling is not entitled to summary judgment. Genuine issues of material fact exist concerning whether defendant Material Handling manufactured the cart. Accordingly, defendant Material Handling’s motion for summary judgment must be denied.
B. Alternative Liability
Alternatively, this Court must deny defendant Material Handling’s motion for summary judgment under the principle of alternative liability. Alternative liability shifts the burden of proof of the causation in fact element to multiple defendants who have acted independently when only one of them caused harm to the plaintiff and it is impossible to identify the specific wrongdoer. See Summers v. Tice, 199 P.2d 1, 4 (Cal. 1948); Restatement (Second) of Torts, §433B(3) (1965). Defendants who fail to meet their burden of proving that they did not cause harm are jointly and severally liable to the plaintiff. See Summers, 199 P.2d at 4.
While Massachusetts courts have not reached the question of alternative liability, various federal and state courts have applied the theory to products liability cases where a plaintiff cannot determine which manufacturer created the product that caused the harm. See, e.g., Hall v. E.I. Du Pont De Nemours & Co., Inc., 345 F.Supp. 353, 380 (E.D.N.Y. 1972) (applying alternative liability where plaintiffs could not determine which manufacturers produced blasting caps that caused injuries); Greene v. Union Optical Center, Inc., 290 N.W.2d 111, 113 (Mich. Ct. App. 1980) (alternative liability applied where plaintiff could not determine which one of two manufacturers produced the lens that caused eye injury). By applying alternative liability, courts prevent “the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.” Restatement (Second) of Torts §433{B)(3) cmt. f (1965). Massachusetts courts have demonstrated a willingness to shift the burden of proof to multiple defendants where an innocent plaintiff would otherwise be left remediless. See, e.g., O’Connor v. Raymark Industries, Inc., 401 Mass. 586, (1988) (applying joint and several liability doctrine to shift burden of proof of causation to multiple defendants in car accident whose several acts concurrently caused plaintiffs indivisible injuries).
Because the Commonwealth has an interest in preventing wrongdoers from escaping liability, this court adopts the alternative liability theory. Before pursuing the alternative liability theory, the plaintiff must show: 1) “that all the defendants have acted tortiously”; 2) that the plaintiffs have been harmed by the conduct of one of the defendants and have brought all possible defendants before the court; and 3) that the plaintiffs, after the exercise of due diligence and through no fault of their own, cannot identify which defendant caused the injury. Zands v. Nelson, 797 F.Supp. 805, 813 (S.D. Cal. 1992); Abel v. Eli Lilly and Co., 343 N.W.2d 164, 173 (Mich.), cert. denied, 469 U.S. 833 (1984). If these three requirements are satisfied, the burden of proof shifts to each defendant to show through a preponderance of the evidence that it did not manufacture the product which harmed the plaintiff. See Abel, 343 N.W. 2d at 173.
Defendant Material Handling states that it and Midwest Aircraft Products Company (MAPCO) supplied a total of 78 carts to USAir. Citing Charles W. Story’s deposition testimony that USAir had approximately 250 carts of the type that struck the plaintiff at the time of the accident, defendant Material Handling concludes that more manufacturers supplied carts to the airline. Plaintiff states in his affidavit, however, that defendant Material Handling supplied USAir with eighty-two carts, while another manufacturer supplied approximately twenty-nine carts. Additionally, plaintiff states that McPaul supplied the airline with 82 carts, while Magee supplied at least 36 carts.
It is undisputed that the beverage carts on the flight lacked braking systems. Additionally, it is undisputed that Material Handling supplied beverage cars to USAir. Having concluded that plaintiff has satisfied the three-pronged test set forth in Zands v. Nelson, supra, this court concludes that a genuine issue of material fact exists concerning whether Material Handling is liable for plaintiffs injuries.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants McPaul and Magee’s motions to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) be ALLOWED. It is further ORDERED that defendant Material Handling’s motion for summary judgment pursuant to Mass.R.Civ.P. 56 be DENIED.